## RICHARD et al. v. HEDDEN.

(*Circuit Court, S. D. New York.* April 29, 1890.)

1. CUSTOMS DUTIES—CONSTRUCTION OF LAWS—CLASSIFICATION—FINISHED FURNITURE.
   The term "finished," as applied to house or cabinet furniture at and prior to the passage of the tariff act of March 3, 1883, (22 U. S. St. 488,) in the furniture trade of this country, was used to designate not only house or cabinet furniture that was in pieces fitted so that they could be put together, and made ready for use as such furniture, but also house or cabinet furniture that was actually put together, and made ready for use as such furniture when shellaced or varnished or painted or painted and varnished, etc.

2. SAME—FURNITURE NOT FINISHED.
   The house or cabinet furniture dutiable under the provision for "house or cabinet furniture in piece or rough, and not finished," contained in Schedule D of this tariff act, (Tariff Index, New, 229,) is house or cabinet furniture not only "in piece or rough," but also "not finished."

3. SAME.
   Cabinet ware and house furniture, whether in pieces fitted so that they can be put together and made ready for use, or actually put together and made ready for use, as such furniture, if "finished," is dutiable under the provision for "cabinet ware and house furniture, finished," contained in said Schedule D, (Tariff Index, New, 230,) and not under the provision for "house or cabinet furniture in piece or rough, and not finished," contained in the same schedule, (Id. 229.)

At Law. Action to recover back duties.

During the year 1886 the plaintiffs imported from Vienna, Austria, into the port of New York, certain Austrian bent-wood furniture in pieces. This furniture was classified for duty under the provision for "cabinet ware and house furniture, finished," contained in schedule D of the tariff act of 1883, (Tariff Index, New, 230;) and duty was exacted

thereon at the rate of 35 per centum *ad valorem* by the defendant as col·lector of customs at that port. Against this classification and exaction the plaintiffs duly protested, claiming that this furniture was "in pieces, and not finished," and therefore dutiable at the rate of 30 per cent. *ad valorem* under the provision for "house or cabinet furniture in piece or rough, and not finished," contained in the same schedule. Id. 229. The plaintiffs thereafter, having made due appeals, duly brought this suit to recover the difference between duties at the rate of 35 per cent. *ad valorem* as exacted by the defendant as said collector, and duties at the rate of 30 per cent. *ad valorem* as claimed in their protest.

Upon the trial, it appeared from the evidence produced by the plaintiffs that this furniture, though in pieces, consisted of all the parts of chairs, settees, tables, and other varieties of house furniture, including the backs, seats, and one or more other portions thereof, that were each put together in permanent form; that each of these parts was completely shaped, smoothed, and fitted to go together without further work thereon, was polished and varnished, or polished, painted, and varnished, had the usual holes therein for the necessary screws and bolts used in fastening these parts together, and was accompanied with all such necessary screws and bolts, so that all these parts were ready to be put together and fastened so as to constitute completed chairs, settees, tables, and other varieties of house furniture, as used by everybody, the putting together and fastening only remaining to be done; that these parts, in the condition described, together with the aforesaid screws and bolts, as imported, were wrapped with or packed in straw or paper, and placed in boxes or cases; that they were so wrapped or packed and placed for convenience of transportation, and to save, as far as possible, the expense of freight; that after their importation the only thing done to them besides putting together, and fastening them so as to constitute completed chairs, settees, tables, and other varieties of house furniture, as used by everybody, was to touch up the ends of the aforesaid screws and bolts, paint or varnish them, in order to make them match such furniture, unless the wood-work had been jammed or crushed or bruised, and, if it had been, then the wood-work was touched up where jammed or crushed or bruised, but otherwise the wood-work was not touched; that the difference between the price at which this furniture was sold when sold as imported from Austria, and the price at which it was sold when put together and fastened so as to be ready for use, was about 3 per cent. of the wholesale price as sold in this country. It appeared from the evidence produced by the defendant: That at and prior to the passage of the aforesaid tariff act, in the furniture trade of this country, furniture like plaintiffs, after the parts thereof were made and fitted, was put together and fastened, shellaced, or varnished, or painted, or painted and varnished, etc., then generally taken to pieces, and afterwards packed for shipment in boxes or cases in the manner in which plaintiffs' was when imported. That at those times, in that trade, each of the terms "set up," "knocked down," "finished," "finished set up," "finished knocked down," and "finished and boxed," as applied to furniture, had a particular and specific trade

meaning, as follows: "Set up" furniture meant furniture whose parts had been fitted, put together, and fastened so that it was in the form in which ordinary furniture was used. "Knocked down" furniture meant furniture that had been set up, and then taken to pieces again. "Finished" furniture meant furniture that had received a shellac or varnish or paint, or paint and varnish, etc., after having been set up, but did not mean completed furniture. "Finished set up" furniture meant set up furniture that had been finished, such as plaintiffs' would be if set up. "Finished knocked down" furniture meant furniture that had been set up, finished, and then knocked down, such as plaintiffs' was when taken from the boxes or cases in which it was imported; and "finished and boxed" furniture meant furniture that had been set up, finished, knocked down, wrapped with or packed in straw or paper, and placed in boxes or cases, such as plaintiffs' was when imported. That in the furniture trade at those times the phrase "furniture in the rough" meant furniture "in the white" or "in the wood," *i. e.*, not finished. That the phrase "in piece" or "in pieces," at those times, was not a term used by that trade with a trade or technical meaning. Both sides having rested, counsel for plaintiffs moved the court to direct the jury to find a verdict in their favor, and counsel for defendant made a motion for a like direction in his favor.

The court denied both motions.

*Edwin B. Smith, Stephen G. Clarke,* and *Albert Comstock,* for plaintiffs.

*Edward Mitchell,* U. S. Atty., and *Thomas Greenwood,* Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally.*) The collector classified the articles in suit under the 230th paragraph of the tariff act as "cabinet ware and house furniture, finished," and laid upon them a duty of 35 per centum *ad valorem.* The plaintiffs claim that such classification was wrong, and that it should have been held dutiable at 30 per centum *ad valorem,* under paragraph 229, which reads: "House or cabinet furniture in piece, or rough, and not finished." Of course the presumption is that the collector's decision was right, in the absence of any testimony. Therefore, in all these actions to recover duties, it is for the plaintiffs, by a fair preponderance of proof, to satisfy the jury that the collector was in error in his assessment. In order to do so in this case, the plaintiffs must satisfy you of two things: (1) That the articles here are either "in piece" or "rough." As to that branch of the case, I may instruct you that there is no conflict of testimony. These articles are furniture in piece. The plaintiffs must go further, however, and satisfy you (2) that these articles, "furniture in piece," are "not finished." Now, the laws imposing duties upon importations are intended for practical use and application by men engaged in trade and commerce; and the language adopted by the legislature, particularly in the denomination of articles, should be construed according to the commercial understanding of the terms used. Many witnesses from the furniture trade have been called to the stand; and, I think without an exception, they have all testified that there is some particular trade meaning of the word

"finished,"—that to the furniture trade the word "finished" means something, and that it means something other and different than it might mean to a man who was not engaged in that trade. It is for you, upon the testimony, to determine what that word did mean, in trade and commerce in this country, on March 3, 1883. Having found out what the trade meaning was, you will then apply that meaning to these articles. If you reach the conclusion that they were "not finished," within the trade meaning of that term, then your verdict must be for the plaintiffs. Should you reach the conclusion that they were "finished," within the trade meaning of that word, your verdict will be for the defendant.

The jury rendered a verdict for the defendant.